UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **GREGORY L. FORD** | **CIVIL ACTION NO. 3:15-cv-2285** |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **LEE HAROLD, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Gregory L. Ford, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 26, 2015. When he filed his complaint plaintiff was a pre-trial detainee incarcerated at the Richland Parish Detention Center (RPDC). While his suit was pending he was convicted and sentenced; he completed his sentence in early November and was released from custody. He claimed that he was denied appropriate medical care during the time he was incarcerated at RPDC. He initially sued Sheriff Lee Harold, Warden Larry Cox, and Nurse Colby Oneal praying for injunctive relief and punitive damages; in an amended complaint, he added Nurse Candace and Nurse Bridget as defendants. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff was incarcerated at the RPDC on April 29, 2015.  He was initially detained on charges of domestic abuse and violating a protective order.

In his original complaint [Doc. 1] he alleged that upon his entry into custody he informed medical staff that he suffers from rectal cancer and that prior to his incarceration he received unspecified treatment for this condition. On some unspecified date he notified the medical department when he began to pass blood. He was transported to LSU in Monroe where he was examined by an oncologist who then ordered him to return in two weeks.

The RPDC medical staff advised plaintiff that they would not take plaintiff back to the oncologist until "next year." Plaintiff was given no medication and continued to pass blood.

Plaintiff also claimed that prior to his arrest and detention a "port-o-cap" to his heart was installed; he complained that the medical staff refused to flush the device daily as required and he complained that the staff refused to provide unspecified blood pressure medication.

On September 30, 2015, an initial review of the pleadings was completed and plaintiff was ordered to amend his complaint to provide the following information:

(1) the name of <u>each person</u> who allegedly violated plaintiff's constitutional rights;

(2) a description of what actually occurred or <u>what each defendant did to violate plaintiff's rights</u>;

(3) <u>the place and date that each event occurred</u>; and

(4) a description of the <u>alleged injury</u> sustained as a result of the alleged violation.

He was specifically directed to address the following:

1. Plaintiff should state whether he is a pre-trial detainee or a convict serving a sentence, the crimes he is charged with and/or convicted of and, in either case he shall indicate an anticipated release date;

2. Plaintiff should specify the nature of the treatment he claims he is being denied

and he should describe in detail the frequency and specific types of treatment he received prior to his incarceration and the frequency and specific types of treatment he asks the Court to order;

3. Plaintiff should also identify the physician(s) who have diagnosed his conditions and the treatments ordered or recommended by said physian(s);

4. Plaintiff should state whether or not he is insured for medical treatment and if not, he should describe the manner of payment for medical treatment employed prior to his incarceration. [Doc. 5]

On October 20, 2015, plaintiff amended his complaint. He claimed "that all the information requested is out of reach of the plaintiff and he is severely restricted from obtaining a lot if not all information..."

Nevertheless, plaintiff did provide the following information. According to the amended complaint, plaintiff was a detainee when he entered custody at RPDC; on some still unspecified date, he was convicted of domestic abuse and violating a protective order and sentenced to serve one year in the custody of the Department of Corrections. (On November 3, 2015, plaintiff advised the Court that he had completed his sentence and had been released. He provided a residential address in Rayville. [Doc. 7])

Plaintiff alleged that he "was taken to L.S.U. E.A. Conway at Monroe for treatment for colon cancer." However, he did not provide the date of this treatment or the nature of the treatment he received. He claimed that he had been previously treated for cancer and it had gone into remission but he claimed that it returned shortly after his arrest. However, he did not provide the relevant dates, nor did he describe the treatment he received that caused the cancer to go into remission.

He claimed that prior to his incarceration he had no health insurance and was being

treated "at the Charity Hospital." However, he provided no dates nor did he describe the treatment he received. Finally, he did not identify the "Charity Hospital" that provided service to him while he was uninsured.

He claimed that he has a "port in his chest that requires daily cleaning that the medical staff still refuses to tend." However, he did not provide the reason for the installation of the port, nor when it was installed.

He claimed that he was taken to L.S.U. Conway where he was examined by an oncologist who asked him to return in two weeks; he again claimed that the "prison official and medical staff" refused to take him back. However, he did not provide any information concerning the treatment he received on this visit, the date of the visit, or the reason for the return appointment.

According to the plaintiff, the RPDC medical staff consists of Nurse Colby, Nurse Candace, and Nurse Bridget and they treated him with Tylenol for which he was charged $2. Plaintiff claimed that he constantly passed large quantities of blood on a daily basis and that the medical staff was aware of plaintiff's condition and advised him to seek treatment upon his release.

According to plaintiff he submitted grievances to the Sheriff, but he received no response.

He claimed that Sheriff Harrell failed to oversee the medical staff and that Nurses Colby, Candace and Bridget "deliberately ignored medical needs of plaintiff [and] refused to treat."

### *Law and Analysis*

*1. Screening*

When suit was filed, plaintiff was a prisoner who had been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his

complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

When he filed his complaint, plaintiff was a pre-trial detainee. His claim that he was denied appropriate medical care arose under the Fourteenth Amendment's due process clause and the standard for judicial review of such claims is "deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir.1996) (*en banc*).[1] In other words, plaintiff's claims are measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable to an inmate or a detainee unless the official "knows of

---

[1] Once plaintiff was convicted, his medical care claim arose under the Eighth Amendment's prohibition of cruel and unusual punishment. Nevertheless, such claims are still analyzed under the deliberate indifference standard as defined herein.

and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail, plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton: "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is

insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). Mere disagreement with diagnosis and treatment can never support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

  Plaintiff raises two separate medical care claims: (1) the defendants did not "treat" his rectal cancer; and (2) the defendants did not daily flush his "port." However, with regard to these claims, plaintiff has failed to provide any of the information he was directed to provide in the amend order. Most importantly, he has not specified "... the nature of the treatment he claims he is being denied..."; nor has he "... describe[d] in detail the frequency and specific types of treatment he received prior to his incarceration and the frequency and specific types of treatment he asks the Court to order..."

  Although he was given the opportunity to do so, he failed to describe the type and nature of treatment that he was denied; and, with regard to the cancer treatment and the irrigation of the "port," he failed to allege any harm, injury, or prejudice he suffered as a result. Plaintiff's claim "that all the information requested is out of reach of the plaintiff and he is severely restricted from obtaining a lot if not all information..." is beyond belief. While it is true that such

7

information as the surnames of the defendants and the specific dates of various events may be unknown to him, he must surely have information concerning the nature of the treatment he claims to have been deprived of; surely he must know the nature of the treatment he now seeks through this complaint; and, finally he must know and be able to articulate the nature of the injury he sustained as a result of the alleged deliberate indifference of the defendants. His failure to provide these elementary facts is sufficient to dismiss his complaint.

Finally, with regard to plaintiff's claim for injunctive relief, it appears that plaintiff is no longer incarcerated and therefore any claim for injunctive relief is moot.  The transfer of a prisoner out of an allegedly offending institution generally render his claims for injunctive relief moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir.2001).

*Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

**shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 7, 2015.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**